

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101646 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Edward W. Sweeney, Jr. |
| DAMON STARKS, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: August 18, 2015 |

### Introduction

Damon Starks (Defendant) appeals the Circuit Court of the City of St. Louis' judgment convicting him of possession of a controlled substance with intent to deliver and possession of a controlled substance. Defendant challenges the trial court's decision overruling his motion to suppress and admitting the contraband, claiming that the officer lacked a reasonable articulable suspicion to stop Defendant. We affirm.

### Factual Background

In May 2011, the police received a citizen's complaint that drug transactions were occurring at a house and adjacent liquor store. Upon surveilling the area, officers observed Defendant, after arriving at the house in his vehicle, meet with another male at the house, walk up the gangway with him, and return to his car with a tied plastic shopping bag. Officers saw

Defendant place the bag on the backseat floorboard of his car before driving away. A patrol unit stopped Defendant's vehicle, and upon approaching the car the officer smelled marijuana. Another officer then seized the white bag from the back seat, which contained marijuana, heroin, and a large amount of cash. Defendant was arrested and charged with possession of a controlled substance with intent to deliver and possession of a controlled substance.

Before a bench trial, Defendant moved to suppress the contraband, arguing that the officer lacked a reasonable articulable suspicion to conduct the stop. The trial court decided to consider Defendant's motion to suppress with the case. Ultimately, the trial court overruled Defendant's motion, finding that the stop of Defendant's vehicle did not violate his Fourth Amendment right to be free from unreasonable searches and seizures. The trial court reasoned that the police had a reasonable suspicion that Defendant was engaged in criminal activity, given that Defendant's actions were consistent with an illegal drug transaction and occurred at a location known for drug activity. The trial court sentenced Defendant as a prior and persistent drug offender to concurrent terms of 10 years' imprisonment.

**Standard of Review**

On review of a trial court's denial of a motion to suppress, we consider the evidence presented in the light most favorable to the trial court's ruling, disregarding any contrary evidence or adverse inferences, to determine whether sufficient evidence exists to support the trial court's decision. *State v. Ford*, 445 S.W.3d 113, 118 (Mo. App. E.D. 2014). This Court will reverse a trial court's decision on a motion to suppress only if its ruling is "clearly erroneous." *State v. Johnson*, 427 S.W.3d 867, 871 (Mo. App. E.D. 2014). "A ruling is clearly erroneous when we are [left] with a definite and firm impression that a mistake has been made." *Id*. (citation and quotations omitted; alteration in original). Further, this Court reviews the trial

court's findings "only to see if they are supported by substantial evidence." *Ford*, 445 S.W.3d at 118 (citation and quotations omitted). "Whether reasonable suspicion exists is a question of law that this Court reviews de novo." *Id*. (citation and quotations omitted).

**Discussion**

In his sole point, Defendant claims the trial court clearly erred by denying his motion to suppress the contraband because it was obtained as a result of an unlawful search and seizure in violation of his Fourth Amendment rights. Defendant asserts that the officer lacked a reasonable articulable suspicion to stop Defendant "after learning that [Defendant] had placed a Walmart bag in his car." In response, the State argues that the police had a reasonable suspicion that Defendant was engaged in criminal activity on the basis of a complaint about drug activity and Defendant's suspicious actions and, therefore, the stop and subsequent seizure of the contraband was constitutionally sound.

The Fourth Amendment of the United States Constitution guarantees citizens a right to be free from unreasonable searches and seizures. U.S. Const. amend. IV.[1] Generally, warrantless searches and seizures are unreasonable and, thus, unconstitutional. *State v. Norfolk*, 366 S.W.3d 528, 533 (Mo. banc 2012). An exception to this rule exists where an officer has "a reasonable suspicion, based on specific and articulable facts, that illegal activity has occurred or is occurring." *Id*. Under such circumstances, the Fourth Amendment allows for a brief investigative detention, or *Terry* stop, of the suspicious person, which is aimed at confirming or dispelling the officer's suspicions. *Id*; *State v. Grayson*, 336 S.W.3d 138, 143 (Mo. banc 2011). "A *Terry* stop must be temporary and last no longer than is necessary to effectuate the purpose of

---

[1] The Fourth Amendment applies to state actors through the Fourteenth Amendment. *State v. Lovelady*, 432 S.W.3d 187, 190 (Mo. banc 2014). The Missouri Constitution provides the same protection and is coextensive with the Fourth Amendment. *Id*.

3

the stop; it remains valid only so long as it is based on reasonable suspicion." *State v. Lovelady*, 432 S.W.3d 187, 191 (Mo. banc 2014) (citation and quotations omitted).

In evaluating whether an officer's suspicion is reasonable courts consider, under the totality of the circumstances, whether the officer's action was justified at its inception and reasonably related in scope to the circumstances that justified the stop. *Norfolk*, 366 S.W.3d at 533-34. "A suspicion is reasonable when, in light of the totality of the circumstances, the officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Grayson*, 336 S.W.3d at 143 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). While the "determination of reasonable suspicion is based on common sense judgments and inferences about human behavior[,]" *Gray v. State*, 378 S.W.3d 376, 382 (Mo. App. E.D. 2012), "[it is also] proper to take into account a police officer's trained instinctive judgment." *State v. Johnson*, 427 S.W.3d 867, 873 (Mo. App. E.D. 2014). In this regard, courts consider an officer's "experience and specialized training [from which the officer] make[s] inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person." *Gray*, 378 S.W.3d at 382 (citation and quotations omitted). However, "[t]he officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *State v. Crabtree*, 398 S.W.3d 57, 60 (Mo. App. W.D. 2013) (citation and quotations omitted). Further, "[c]onduct that is innocent when considered in isolation may support a showing of reasonable suspicion." *Lovelady*, 432 S.W.3d at 192.

Here, Sergeant Mark McMurry testified that in the early evening of May 31, 2011, he was conducting surveillance of a home and liquor store from a vacant building across the street. McMurry explained that an "elderly gentleman" who lived on the same block had complained of

4

drug sales occurring at the home and liquor store. McMurry then described what happened next: Shortly after setting up surveillance, McMurry saw a male standing on the top steps of the residence. Then, a car pulled up in front of the residence and the driver, Defendant, exited and walked toward the residence; as Defendant approached the individual standing on the steps, he lifted his t-shirt, indicating toward his waistband. As Defendant made this motion, he continued to walk into the gangway and the other male followed behind him. A couple minutes later, the man reappeared and walked toward the vehicle, while Defendant remained in the gangway. A woman approached Defendant's vehicle and got into the front passenger seat and the man sat in the backseat and talked to the woman. Ten minutes later, Defendant exited the gangway carrying a white plastic grocery bag, which was tied at the handles and appeared to have bulky objects in it. Defendant placed the bag on the backseat floorboard and the other man then walked away, while Defendant and the woman drove away. Shortly thereafter, a patrol unit, to which McMurry had communicated his observations, pulled over Defendant's vehicle and, upon detecting the smell of marijuana, seized the contraband in the backseat.

Considering the totality of the circumstances, we agree with the trial court that a reasonable articulable suspicion existed to stop Defendant's vehicle. McMurry testified that he found the situation suspicious because Defendant had lifted his shirt and shown the other man something, which Defendant "wanted hidden from plain view," and also because "it's not unusual to conduct narcotics business from gangways." McMurry further indicated that he also thought the other man was possibly "counter surveillance, watching out for police, or protection, possibly. Or may have been involved in the transaction himself." According to McMurry, based on his 19 years' experience with narcotics investigations, it was not uncommon for drug transactions to occur in gangways and for there to be a "look out." McMurry had also received a

citizen's complaint the preceding week that drug transactions were taking place at the residence and adjacent liquor store. Thus, the complaint, in conjunction with Defendant's activities that were consistent with an illegal drug transaction, constituted sufficient specific facts to create a reasonable suspicion that Defendant might be involved in criminal activity. *See Grayson*, 336 S.W.3d at 144 (a stop based on an anonymous tip is valid if corroborated by independent evidence). Accordingly, no Fourth Amendment violation occurred when Defendant's vehicle was stopped.

Defendant, however, asserts that the police merely observed Defendant engage in innocent activity—mainly carrying a tied-shut plastic Walmart bag from the side of a house—and, only had a "hunch" that Defendant may have been involved in criminal activity. According to Defendant, he did not engage in any activity typically associated with criminal endeavors and the citizen's complaint was uncorroborated. First, it is irrelevant that the police did not observe many of the behaviors courts recognize as giving rise to a reasonable articulable suspicion, e.g., a hand-to-hand transaction, furtive and evasive actions, or a violation of the traffic laws. Defendant cites no law in support of the proposition that the absence of such behaviors renders a stop unreasonable when the totality of the circumstances indicates otherwise.

Second, Defendant's argument ignores the other factual circumstances surrounding Defendant's act of carrying the Walmart bag from the side of the house to his car. While this act alone may have been considered innocent and insufficient to create a reasonable suspicion of criminal activity, when put together with the entire scenario Defendant engaged in, these acts sufficiently formed a reasonable suspicion that criminal activity had or was about to occur. *See State v. Woods*, 284 S.W.3d 630, 635 (Mo. App. W.D. 2009) ("Acts that separately seem innocent may, when combined, give rise to [a] reasonable suspicion."). Similarly, Defendant's

6

assertion that the citizen's complaint was a "trivial component" of the officer's collective information because it was uncorroborated, ignores the factual indicia that supported the tip.[2]

Considering the totality of the circumstances, the police had a reasonable suspicion sufficient to conduct an investigatory stop. The trial court did not err by denying Defendant's motion to suppress the contraband or admitting the evidence at trial. Point denied.

### Conclusion

The judgement of the trial court is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Angela T. Quigless, J., concur.

---

[2] In support of his assertion that the complaint in this case was of little value, Defendant compares the citizen's complaint to the uncorroborated tips in *Grayson*, 336 S.W.3d at 138 and *State v. Flowers*, 420 S.W.3d 579 (Mo. App. S.D. 2013). Those cases are distinguishable because, there, the tips were truly anonymous, each tip identified a particular perpetrator, and the officers conducted a *Terry* stop on the basis of the tip alone absent any other indication of criminal activity. *See Grayson*, 336 S.W.3d at 145; *Flowers*, 420 S.W.3d at 585. *Grayson* and *Flowers*, therefore, do not support Defendant's claim that the police lacked a reasonable articulable suspicion to conduct a *Terry* stop in this case.